David P. Myers (SBN 206137)
dmyers@myerslawgroup.com
Jason Hatcher (SBN 285481)
jhatcher@myerslawgroup.com
**THE MYERS LAW GROUP, A.P.C.**
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 919-2027
Facsimile: (888) 375-2102

Attorneys for Plaintiff, Class Members and Participating Collective Members

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY WILSON, an individual, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>PRIMARY PROVIDER MANAGEMENT COMPANY, INC., a California Corporation; AGILON HEALTH, INC., a Delaware Corporation; CYBER PRO SYSTEMS dba MEDICAL DATA EXCHANGE, INC., a California Corporation; CLAYTON DUBILIER & RICE, LLC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 5:19-cv-00114-GW-KK<br><br>Assigned to: Honorable George H. Wu<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Date:          October 19, 2020<br>Time:          8:30 a.m.<br>Courtroom:   9D |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

1

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

YOU ARE HEREBY NOTIFIED THAT on October 19, 2020, at 8:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 9D of the United States District Court, Central District located at 350 West 1st Street, Los Angeles, CA 90011, Honorable Judge George H. Wu presiding, Plaintiff Kelly Wilson ("Plaintiff") as an individual and on behalf of the Settlement Class Members and Participating Collective Action Members will and hereby does move this Court for entry of Order Granting Final Approval of Class and Collective Action Settlement. Good cause exists for the granting of the Motion in that the proposed settlement is fair, reasonable, and adequate.

The Motion will be based on this Notice of Motion, the Declarations of Class/Collective counsel, the Declaration of the Class/Collective Representative, Declaration from the Claims Administrator, the Memorandum of Points and Authorities set forth below, the record on file and on such oral and documentary evidence as may be presented at the hearing of the Motion.

DATED: September 28, 2020                    Respectfully Submitted,
                                             **THE MYERS LAW GROUP, A.P.C.**


                                       By: _/s/Jason Hatcher_____
                                             David P. Myers, Esq.
                                             Justin C. Crane, Esq.
                                             Jason Hatcher, Esq.
                                             Attorneys for Plaintiff, on behalf of
                                             herself and all others similarly
                                             situated

# <u>TABLE OF CONTENTS</u>

**I.    INTRODUCTION** .................................................................................... 1

**II.    SUMMARY OF LITIGATION** ........................................................... 2

**III.    THE SETTLEMENT** ............................................................................ 5

   A.    THE FLSA COLLECTIVE CLASS ................................................. 5

   B.    THE SCM CLASS ............................................................................. 5

   C.    BENEFITS TO THE PCM AND SCM CLASSES: ................................. 6

     1.    Benefits to the PCM .................................................................. 6

     2.    Benefits to the SCM .................................................................. 6

   D.    SETTLEMENT TERMS .................................................................. 6

     1.    PCM Payments and FLSA Release of Claims ............................ 7

     2.    SCM Payments and Released Claims Class Action .................... 8

     3.    Class Representative Enhancement Payment and Release ......... 9

     4.    Attorneys' Fees and Costs ........................................................ 9

     5.    LWDA Payment ....................................................................... 10

     6.    Claims Administration Costs .................................................... 10

   E.    NOTICE AND SETTLEMENT ADMINISTRATION: ........................ 10

**IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT** ...................................................................................... 11

   A.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ............ 12

   B.    FLSA COLLECTIVE ACTION SETTLEMENT APPROVAL ................ 13

   C.    THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE PURSUANT TO RULE 23(E) ........................................................ 13

     1.    Rule 23(e)(1): Notice/Claim Process was Fair, Adequate and Reasonable ...... 13

     2.    Rule 23(e)(2)(A) and Rule 23(e)(2)(B): Arm's Length Negotiations and Adequate Representation Show Fair, Reasonable and Adequate Settlement ...... 14

i

3.    Rule 23(e)(2)(C): The Settlement is Fair, Reasonable and Adequate .............. 15

4.    Rule 23(e)(2)(D): The Settlement Treats Members Equitably ......................... 18

D.    9TH CIRCUIT FACTORS SHOW A FAIR, REASONABLE AND ADEQUATE SETTLEMENT ....................................................................................... 18

1.    Strength of Plaintiff's Case ............................................................ 18

2.    Risks, Expense, Complexity, And Likely Duration of Further Litigation ........ 18

3.    The Risks of Maintaining Class Action Status Throughout Trial .................... 20

4.    The Amount Offered in The Settlement ............................................ 20

5.    Sufficient Discovery and Investigation Has Been Completed .......................... 21

6.    The Experience and Views of Counsel .............................................. 22

7.    Presence of Governmental Participant .............................................. 22

8.    Reaction of the Class and Collective Members ........................................ 22

9.    Arm's Length Negotiations ........................................................ 23

E.    RULE 23(A), (B)(3) AND (C)(2)(B) REQUIREMENTS SATISFIED ................. 23

**V.    SETTLEMENT PENALTIES UNDER PAGA ARE REASONABLE** .............. 24

**VI.   CONCLUSION** ........................................................................ 25

# TABLE OF AUTHORITIES

**CASES**

*Adoma v. Univ. of Phoenix, Inc.*,
  913 F.Supp.2d 964, 972 (E.D. Cal. 2012) ..................................................... 11, 23

*Aguilar v. Zep Inc.*
  (N.D.Cal. May 12, 2014) 2014 U.S.Dist.LEXIS 65166, *12 ................................. 16, 18

*Alcala v. Meyer Logistics, Inc.*
  (C.D. Cal. 2019) 2019 U.S.Dist.LEXIS 166879, *26 ..................................... 25

*Arias v. Superior Court*, *supra*,
  46 Cal.4th, 980 ....................................................................... 25

*Chindarah v. Pick Up Stix, Inc.*
  (2009) 171 Cal.App.4th 796 ............................................................ 16

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566, 576 (9th Cir. 2004) .................................................... 12, 13

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268, 1276 (9th Cir. 1992) .................................................. 11, 23

*Corona v. Remington Lodging & Hospitality, LLC*
  (C.D. Cal. 2019) 2019 U.S.Dist.LEXIS 68116, *14 ............................... passim

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ......................................................... 23

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................... 12, 13, 15

*Harris v. Vector Mktg. Corp.*,
  2011 WL 1627973, *8 (N.D. Cal. Apr. 29, 2011) ................................... 14, 23

*In re Heritage Bond Litig.*,
  2005 U.S. Dist. LEXIS 13555, *32 (C.D. Cal. June 10, 2005) ................... 23

*In re Heritage Bond Litig.*,

    2005 WL 1594403, *9 (C.D. Cal. Mar. 9, 1989) ...........................................................14

*In re Pac. Enters. Sec. Litig.*,

    47 F.3d 373 (9th Cir. 1995) ..........................................................................................22

*In re Portal Software, Inc. Securities Litig.*,

    Case No. C-03-5138 VRW, 2007 WL 4171201 *3 (N.D. Cal. Nov. 26, 2007) ............19

*Iskanian v. CLS Transportation Los Angeles, LLC*, *supra*,

    59 Cal.4th, 387 ..............................................................................................................25

*Kempen v. Matheson Tri-Gas, Inc.*

    (N.D. Cal. 2016) 2016 U.S. Dist. LEXIS 100537, 2016 WL 407336, *4 .....................13

*Lewis v. Starbucks Corp.*,

    No. 2:07-cv-00490-MCE, 2008 U.S. Dist. LEXIS 83192, 2008 WL 4196690, *6 (E.D.

    Cal. Sept. 11, 2008) ......................................................................................................21

*Linney v. Cellular Alaska P'ship*

    (9th Cir. 1998) 151 F.3d 1234 ......................................................................................21

*Marino v. CACafe, Inc.*,

    2017 U.S.Dist.LEXIS 64947, *6 (N.D. Cal. 2017) .......................................................19

*Millan v. Cascade Water Servs.*

    (E.D.Cal. 2015) 310 F.R.D. 593 ...................................................................................17

*National Rural Tele. Coop. v. DIRECTTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) ...........................................................................19, 22

*O'Connor v. Uber Techs., Inc.*,

    2016 U.S. Dist. LEXIS 110281, *10 ............................................................................24

*Officers for Justice v. Civil Serv. Comm'n*,

    688 F.2d 615, 625 (9th Cir. 1982) ...............................................................................12

*Rodriguez v. W. Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ..................................................................................14, 18

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

*Schaffer v. Litton Loan Servicing, LP*, 2012 U.S.Dist.LEXIS 189830, *42 (C.D. Cal. Nov. 2012) ................................................................................................................21

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .............................................................................12

*Telecomm. Corp. v. DirectTV*
  (C.D. Cal. 2004) 221 F.R.D. 523 .................................................................16, 20

*Thompson v. Costco Wholesale Corp.*
  (S.D. Cal. 2017) 2017 U.S.Dist.LEXIS 142290, *13 ........................................13

*Turner v. Motel 6 Operating L.P.*
  (C.D. Cal. 2018) 2018 U.S.Dist.LEXIS 224004, *19 .......................................25

*Van Ba Ma v. Covidien Holding, Inc.*,
  2014 U.S. Dist. LEXIS 76359, 7 (C.D. Cal. 2014) ..........................................15

*Vizcaino v. Microsoft Corp.*
  (9th Cir. 2002) 290 F.3d 1043 ...........................................................................17

*Weinstein v. Mortgage Contr. Servs., LLC*
  (C.D.Cal. Oct. 23, 2018, No. EDCV 14-02521 JGB (SPx)) 2018 U.S.Dist.LEXIS 182718 ...............................................................................................20, 23

*Williams v. Superior Court* (2017)
  3 Cal.5th 531 .....................................................................................................25

**STATUTES**

California Civil Code §1542 ...........................................................................9

California Labor Code § 2699(e)(2) ............................................................24

Federal Rule of Civil Procedure 23 .....................................................passim

U.S.C. § 216(b) ..............................................................................................13

*///*

*///*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OTHER AUTHORITIES**

4 *Newberg on Class Actions* § 11:50 at 155 ................................................................18, 23

Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), § 21.63, *et seq.*...........12

## I.    INTRODUCTION

Plaintiff Kelly Wilson ("Plaintiff" or "Class Representative") has achieved an excellent result in this litigation, embodied in the Addendum to Amended Stipulation and Settlement of Class, Collective, and Representative Action and Amended Stipulation and Settlement of Class, Collective, and Representative Action (collectively "Settlement Agreement" or "Settlement").

The proposed Settlement provides substantial benefits to the Settlement Class Members ("SCM") and Participating Collective Members ("PCM") in this hybrid Rule 23 class and Fair Labor Standards Act ("FLSA") collective action. The Settlement is the product of aggressive and steadfast litigation by Plaintiff and Plaintiff's Counsel ("Plaintiff's Counsel" or "Class/Collective Counsel") to obtain a fantastic result for the SCM and PCM.

The Settlement will pay the average PCM approximately $1,906.52. (Decl. Alcantara, ¶14). The Settlement will pay the average Rule 23 SCM, who did not receive a Direct Settlement Payment ("DSP"), approximately $4,391.53. (Id.).[1] These SCM are the Non-DSP SCM. The Settlement will pay the average Rule 23 SCM, who received a DSP approximately, $3,206.68 (a $196.11 average additional payment to the average DSP payment of $3,206.68). (Id.); (Decl. Hatcher at ¶13). These SCM are the DSP SCM. Thus, the Settlement will pay the average SCM who is a PCM approximately $6,298.04 or $5,309.31, depending on whether they received a DSP. (Decl. Hatcher, ¶13).

Plaintiff and Plaintiff's Counsel's efforts yielded future relief as Defendants[2] reclassified the SCM and PCM as non-exempt employees due to Plaintiff's PAGA Notice

---

[1] Defendants unilaterally paid to 57 SCM a DSP in exchange for a release of claims in this lawsuit as a result of Plaintiff's Private Attorneys General Act ("PAGA") Notice and original class action Complaint. There are 57 DSP SCM and 12 Non-DSP SCM.

[2] The Defendants are Primary Provider Management Company, Inc. ("PPMC"); Agilon Health, Inc. ("Agilon"); Cyber Pro Systems dba Medical Data Exchange, Inc. ("Cyber Pro"); and MDX Hawaii, Inc. ("MDX") (collectively "Defendants").

and class action Complaint. [Dkt. 44 at 25:6-9; Dkt. 44-8 at ¶8; Dkt. 45 at RJN 3 and 4; Dkt. 45-2 at ¶¶2-10 and Exhs. A-I; Dkt. 45-1][3].

The Class Members have shown their approval of the Settlement Agreement as 100% are participating in the settlement and no objections have been lodged by the Class Members or the Fair Labor Standards Act ("FLSA") Collective Members after notice of the terms of the Settlement Agreement. (Alcantara Decl. at ¶¶ 15-17).[4] The FLSA Collective Action Members have shown their approval of the Settlement as approximately 72% have opted-in to the Settlement. (Id. at ¶12).

On May 18, 2020, the Court preliminarily approved this Settlement. [Dkt. 57]. This motion seeks the Court's final approval of this Settlement for a wage and hour class action, FLSA collective action, and representative action under California's Private Attorneys General Act – Cal. Labor Code § 2698 et seq. ("PAGA"). Under this non-reversionary settlement, Defendants have agreed to pay a total Maximum Settlement Consideration ("MSC") of Five Hundred Thousand Dollars ($500,000.00) for 69 SCM and 42 PCM.

The Court should grant final approval of this Settlement as the Settlement Agreement is fair, reasonable, and adequate. (Decl. Hatcher ¶8); (Decl. Plf. at ¶16).[5]

## II.    SUMMARY OF LITIGATION

This case is a putative class and collective action on behalf of similarly situated current and former employees of Defendants in California who were classified as exempt

---

[3] For Dkt. references the page number is the Dkt. page number not document page number.
[4] Defendants mistakenly informed the Claims Administrator that there are 54 DSP SCM rather than 57 DSP SCM. Thus, 3 DSP SCM received a June 12, 2020 Notice Packet with an inadvertently incorrect estimated payment. The parties agreed to provide a Corrective Notice of Settlement Class Action and Collective Action Notice with the corrected estimate payment and additional time to object or opt-out that was mailed to these 3 DSP SCM on September 23, 2020 by Simpluris. (Decl. Hatcher at ¶38, Exh. 5). Plaintiff's Counsel will file a Reply updating the Court as to whether these 3 DSP SCM have changed their stance regarding the Settlement.
[5] The footer on Plaintiff's declaration inadvertently states "Preliminary Approval" rather than "Final Approval".

nurses and who processed authorization requests. (Exh. 1 at Secs. 1.H. and 1.J.).

Defendants are in the business of providing support with medical claims processing, utilization management, and case management for health care providers throughout California, and the United States. Agilon offers and provides administrative services to medical providers that includes utilization management, payor/provider contracting, and claims processing. [Dkt. 44-6 at pg. 4/4)] *see* www.agilonhealth.com/ thebig-idea/ (Under the Physician & Agilon Health Joint Venture model Agilon provides the utilization management services). Agilon employs the SCM and the PCM to perform utilization management services. Defendants are joint employers of the SCM and PCM.

Defendants are acquisitions, alter-egos, integrated enterprises and/or joint ventures. Clayton, Dubilier & Rice, LLC "formed agilon health through the acquisition and combination" of PPMC and Cyber-Pro. [Dkt. 44-7 at pg. 1/3]. Agilon is MDX. [Dkt. 44-5 at pg. 3/5] ("In Hawaii, agilon health, operating as MDX Hawaii"); *see also* www.mdxhawaii.com/about-us/default.aspx (website states MDX is a "platform company" of Agilon). Defendants share common leadership. [Dkt. 45 at ¶6, 7, 8; Dkt. 45-3; 45-4; 45-5]; www.agilonhealth.com/our-team at Market Leadership.

This action alleges that Defendants misclassified the SCM and PCM as exempt employees, which resulted in Defendants violating multiple wage and hour provisions under the California Labor Code and Fair Labor Standards Act ("FLSA"). On or about July 23, 2018, Plaintiff provided PAGA notice to the Labor Workforce Development Agency ("LWDA") and PPMC. [Dkt. 44-3].

In reaction to Plaintiff's PAGA notice, in September 2018, Defendants unilaterally began offering settlement payments in exchange for releases (the DSP) from the Class Members. [Dkt. 44 at 25:6-9; Dkt. 44-8 at ¶8; Dkt. 45 at RJN 3 and 4; Dkt. 45-2 at ¶¶2-10 and Exhs. A-I; Dkt. 45-1]. Defendants data provides that 57 of the 69 class members accepted DSP. (Alcantara Decl. at ¶6). The DSP release identifies the named Defendants as entities that the employees may have claims against related to this lawsuit. [Dkt. 45 at ¶ 4; Dkt. 45-2 at ¶5 – Exh. D and ¶9 – Exh. H]; [Id. at ¶ 3, Dkt. 45-1 at ¶8 – Exh. C].

On or about October 2, 2018, Plaintiff filed the instant lawsuit in Riverside Superior Court, Case No. RIC1820411 ("Lawsuit" or "Action"). The original Complaint alleges state law claims for: (1) Failure to Pay Minimum Wage, (2) Failure to Pay All Overtime and Double Time Wages, (3) Failure to Provide Rest Periods, (4) Failure to Furnish Accurate Wage Statements, (5) Failure to Pay All Wages Due at Separation, (6) Unfair Competition, and (7) PAGA based on the unlawful misclassification of the putative class as exempt salaried employees against PPMC and Agilon. On October 24, 2018, Plaintiff filed a First Amended Complaint ("FAC") adding a claim for overtime under the FLSA, 29 U.S.C. §207, and named additional Defendants Cyber-Pro, MDX and Clayton Dubilier & Rice, LLC ("CDR").

On October 31, 2018, Plaintiff filed an ex parte application seeking a Temporary Restraining Order against the DSP. [Dkt. 45 at RJN 1, 2, 3]. PPMC and Agilon opposed the ex parte application. [Id. at RJN 4]. On November 1, 2018, the Court denied Plaintiff's ex parte application. [Id. at RJN 5].

PPMC and Agilon filed Answers on November 30, 2018. Cyber-pro filed an Answer on January 17, 2019. On January 18, 2019, Defendants removed the lawsuit to the instant Court. [Dkt. 1]. On January 25, 2019, Defendants filed Answers to Plaintiff's FAC. [Dkts. 7, 8, 9].

On March 13, 2019, the parties participated in private mediation with Steven Rottman, Esq.. (Decl. Hatcher, ¶8). On March 14, 2019, the parties informed the Court that the parties had reached a settlement agreement in principle. (Id. at ¶9).

The parties signed an initial settlement agreement on July 18, 2019. On January 30, 2020, the parties signed an amended Settlement Agreement, after Plaintiff's first motion for preliminary approval. (Id. at 6, 9, Exh. 1A). On April 20, 2020, an addendum to the Settlement Agreement was signed. (Decl. Hatcher, ¶¶ 6, 9, Exh. 1B). On April 22, 2020, Plaintiff filed a supplemental brief to the amended motion for preliminary approval. [Dkt. 52]. On May 18, 2020, this Court granted Plaintiff's Amended Motion for Preliminary Approval of Class Action Settlement. [Dkt. 57]. This included the filing of a Second

Amended Complaint that limits the FLSA claims to factual allegations based on the period of exempt misclassification. [Dkt. 44-1 at Exh B of Exh. 1].

On June 12, 2020, the Notice of Class Action Settlement ("Notice Packet") was mailed to all Class Members and FLSA Collective Members. (Decl. Alcantara at ¶8, Exh. A). On July 13, 2020, a FLSA Reminder Claim Form was mailed to all of the FLSA Collective Members. (Id. at ¶10, Exh. B). On August 21, 2020, a Second FLSA Reminder Claim Form was mailed to all of the FLSA Collective Members who had not already opted-in to the Collective Action. (Id.). The SCM and the PCM showed their approval of this Settlement with no objections, 100% participation by the SCM and 72% participation by the FLSA Collective Members (Id. at ¶¶ 15-17, 12).

Based on Class Counsel's independent investigation and evaluation, Class Counsel believes the Settlement is fair, reasonable, and adequate and is in the best interest of the SCM and PCM based on the significant benefits provided by the Settlement and in light of all known facts and circumstances, including the risk of loss and defenses asserted by Defendants.

## III.    THE SETTLEMENT

### A. <u>The FLSA Collective Class</u>

The PCM are:

All current and former employees of Defendants in California, for the period of October 24, 2015 through September 30, 2018, who were classified as an exempt nurse and processed authorization requests.

(Exh. 1A at Sec. 1.J.). PCM, those FLSA Collective Members who opted-in to the action, will receive a non-reversionary share of the Net Settlement Amount for Collective Action ("NSA for Collective Action"). (Exh. 1A at Secs. I.Q; I.AA; VIII.8).

### B. <u>The SCM Class</u>

The SCM are:

All current and former employees of Defendants in California, for the period of October 2, 2014 through September 30, 2018, who were classified as an exempt nurse and who processed authorization requests.

(Exh. 1A at Sec. I.H). SCM, those Class Members who do not request to be excluded from the Settlement, will receive payment from the Net Settlement Amount for Class Action ("NSA Class Action"); (Exh. 1B at ¶¶ 4 and 5).

### C. Benefits to the PCM and SCM Classes:

#### 1. Benefits to the PCM

The Settlement will pay the average FLSA PCM approximately <u>$1,906.52</u>. (Alcantara Decl. ¶14). The highest estimated payment to a PCM is $3,741.05. (<u>Id.</u>).

#### 2. Benefits to the SCM

The Settlement will pay the average SCM <u>approximately $4,391.53 to $3,402.80</u>. (<u>Id.</u>); (Decl. Hatcher ¶13). The Settlement will pay the average Non-DSP SCM <u>approximately $4,391.53</u> due to Plaintiff's and Class Counsel's steadfast approach to continue litigating this case as a class action. (Alcantara Decl. ¶14); (Decl. Hatcher ¶13). The Settlement will pay the average DSP SCM <u>approximately $3,402.80</u>; this is an average additional payment of $196.11 with the average DSP of $3,206.68, due to Plaintiff's and Class Counsel's steadfast approach to continue litigating this case as a class action. (Alcantara Decl. ¶14); (Decl. Hatcher ¶13).

Moreover, Plaintiff's PAGA notice, and this action, were a catalyst for future relief as Defendants reclassified the SCM and PCM as non-exempt employees. [Dkt. 44 at 25:6-9; Dkt. 44-8 at ¶8; Dkt. 45 at RJN 3 and 4; Dkt. 45-2 at ¶¶2-10 and Exhs. A-I; Dkt. 45-1]. This is a significant as the primary common issue in this case is whether Defendants misclassified the SCM and PCM as exempt employees, thus depriving them of the protections afforded under the Cal. Labor Code and the FLSA, i.e. unpaid overtime pay, rest period violations, etc..

### D. Settlement Terms

The Settlement provides that Defendants shall pay a MSC of $500,000. (Decl. Hatcher ¶12, Exh. 1A at Sec. I.T). This MSC includes the settlement payments that will be made to the SCM, PCM, settlement administration costs, awards of attorneys' fees and actual litigation costs reimbursement, the service award for Plaintiff, and the PAGA

6

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

payment to the California LWDA. (Id.). The MSC also includes a credit of $182,780.94 for the DSP already made to putative class members. (Id.).

Under this Settlement, after the DSP credit, the remaining portion to be paid by Defendants is $317,219.06. From this, the Net Settlement Amount ("NSA") is $143,950.43, after deducting the allocations for fees, actual litigation costs, actual administration costs, and the representative enhancement. (Alcantara Decl. ¶14).

The NSA contains two separate sub-net settlement amounts: (1) the NSA Collective Action for the PCM and (2) NSA Class Action for the SCM. (Exh. 1A at Secs. I.V; I.W). The NSA for Class Action and the NSA for Collective Action are separate and independent of each other. [Dkt. 52 at Secs. I.3 and I.2]. This provides that the separate funds are not affected by participation levels in the separate funds. [Id.]. Participation in the Class Action settlement does not affect participation in the FLSA Collective Action settlement, or vice versa. [Id.].

The estimated NSA for Collective Action is $80,073.64. (Decl. Hatcher ¶12). The estimated NSA for Class Action is $63,876.79. (Id.). There is no reversion for the NSA for Class Action or NSA for Collective Action. (Exh. 1A at Sec. VIII.8; Exh. 1B at ¶¶ 4, 5).

The NSA for Class Action is separated in into two funds (i) the DSP Fund, representing 17.5 of the NSA for Class Action for the DSP SCM and (2) the Non-DSP Fund, representing 82.5% of the NSA for Class Action for the Non-DSP SCM. [Dkt. 52 at Sec. I.3]; (Exh. 1B at ¶¶ 4, 5). Thus, the Non-DSP SCM, who did not receive a DSP, will receive a pro rata share that is not diluted by the DSP. (Id.). The NSA for Collective Action will be allocated only to the PCM and is not affected by the DSP. (Dkt. 52 at Sec. I.2).

**1. PCM Payments and FLSA Release of Claims**
   **a. PCM Payments**

The Settlement will pay the average PCM approximately $1,906.52 based on the Settlement. (Decl. Alcantara, ¶14); (Decl. Hatcher at ¶13). Each PCM will receive a share of the NSA for Collective Action that is equal to (i) the number of workweeks worked, from October 24, 2015 to September 30, 2018, by the individual PCM during the Collective

Action Period, according to Defendants' records, divided by the total number of workweeks worked, from October 24, 2015 to September 30, 2018, by all PCM during the Collective Action Period, according to Defendants' records, (ii) multiplied by the amount of NSA for Collective Action. (Exh. 1A at Sec. VIII, ¶9). There is no reversion to the NSA for Collective Action. (Id.).

### b. Release of Claim for Participating Collective Members

PCM will release all FLSA claims that were alleged or that reasonably could have been alleged based on the facts alleged in the Second Amended Complaint. (Exh. 1A at Secs. I.AA; I.GG). Only PCM will release FLSA claims under the Settlement. (Id.); [Dkt. 52 at Sec. I.2].

### 2. SCM Payments and Released Claims Class Action
#### a. SCM Payments

The Settlement will pay the average SCM approximately $4,391.53 or $3,402.80 (an additional payment of $196.11 to the average DSP of $3,206.68 for DSP SCM). (Alcantara Decl. ¶14); (Decl. Hatcher at ¶13). The Individual Settlement Payments for SCM will be calculated on a pro rata share of Fund 1 or Fund 2 based on whether the SCM is a DSP SCM or a Non-DSP SCM. The formula for calculation is the same for each fund.

| Fund 1 Payment Calculations | Fund 2 Payment Calculations |
| --- | --- |
| Each SCM, who received a DSP, will receive a share of 17.5% of the NSA for Class Action that is equal to (i) the number of workweeks worked, from October 2, 2014 to September 30, 2018, by the SCM who received a DSP during the Class Action Period plus one (1) workweek credited to the SCM who is a former employee and who received a DSP during the Class Action Period, according to Defendants' records, divided by the total number of workweeks worked, from October 2, 2014 to September 30, 2018, by all SCMs, who received a DSP during the | Each SCM, who did not receive a DSP, will receive a share of 82.5% of the NSA for Class Action that is equal to (i) the number of workweeks worked, from October 2, 2014 to September 30, 2018, by the SCM who did not receive a DSP during the Class Action Period plus one (1) workweek credited to SCM who is a former employee and who did not receive a DSP during the Class Action Period, according to Defendants' records, divided by the total number of workweeks worked, from October 2, 2014 to September 30, 2018, by all SCMs, who did not receive a DSP during |

| | |
|---|---|
| Class Action Period plus one (1) workweek credited for each formerly employed SCM who received a DSP during the Class Action Period, according to Defendants' records, (ii) multiplied by 17.5% of the NSA for Class Action. | the Class Action Period plus one (1) workweek credited for each formerly employed SCM who did not receive a DSP during the Class Action Period, according to Defendants' records, (ii) multiplied by 82.5% of the NSA for Class Action. |

(Exh. 1B at ¶¶ 4, 5). There is <u>no reversion</u> of the NSA for SCM for either Fund 1 or Fund 2. (<u>Id.</u>).

### b. Release of Claim for SCM

Upon final approval by the Court, each SCM will release Defendants and the Releasees from the Released Claims Class Action (as defined in the parties' settlement agreement). (Exh. 1A at Secs. I.FF, I.MM, I.P). The release will apply to any claims arising from or related to the facts and claims alleged in the Second Amended Complaint ("SAC"), or that could have been raised in the SAC based on the facts and claims alleged in the SAC. (<u>Id.</u>). The SAC is predicated on facts and claims arising from Defendants' misclassification of the SCM as exempt employees. (<u>Id.</u> at Exh. B).

### 3. <u>Class Representative Enhancement Payment and Release</u>

Subject to Court approval, Plaintiff shall be paid a service payment (referred to as "Class Representative Enhancement Payment") not to exceed $20,000 for her time and effort in bringing and presenting the action, and in exchange for a general release of all claims, known or unknown, pursuant to *Civil Code* §1542. (Exh. 1A at Secs. I.CC; IV.3). If the Court awards less than this amount the difference shall be redistributed to the SCM on a pro-rata basis. (<u>Id.</u>). This amount is fair, reasonable, and adequate. (Decl. Plf. at ¶20); (Decl. Hatcher at ¶26). The SCM and PCM do not object to this enhancement. (Decl. Alcantara at ¶16).

### 4. <u>Attorneys' Fees and Costs</u>

Subject to Court approval, Class/Collective Counsel shall receive an award of attorneys' fees in an amount not to exceed $125,000 (below Plaintiff's Counsel's lodestar),

representing 25% of the MSC and actual litigation costs of $9,505.63. (Exh. 1A at Secs. I.B; III.2); (Decl. Hatcher at ¶41, Exh. 2; ¶48, Exh. 3). This is less than the $20,000 allocated to litigation costs and accordingly the difference is added to the NSA for Class Action. (Id.). These amounts are fair, reasonable, and adequate. (Decl. Plf. at ¶22); (Decl. Hatcher at ¶¶ 3-4, 18-25, 37, 39-49, 52-56). The SCM and PCM do not object to this enhancement. (Decl. Alcantara at ¶16).

### 5. **LWDA Payment**

Subject to Court Approval, $7,500 of the MSC shall be paid to the LWDA (75% of the $10,000 allocation). (Exh. 1A at Secs. I.S; VI.6).

### 6. **Claims Administration Costs**

Subject to Court approval, $11,263.00 of the MSC shall be allocated to the Claims Administrator, Simpluris, Inc. ("Claims Administrator" or "Simpluris"), which is less than the $15,000 allocated to the claims administration costs. (Exh. 1A at Secs. I.D; XII.30). This is added to the NSA. (Id.). The actual cost of $11,263 is fair, reasonable, and adequate.

As the following shows, the settlement is a reasonable compromise of the claims raised in the lawsuit, as it adequately reflects a fair compromise of and consideration for claims based on their strengths and risks of failing on the merits.

### E. **Notice and Settlement Administration:**

As part of this Court's Order granting preliminary approval of the settlement, the Court approved Simpluris to be the Claims Administrator and issued directives as to how notice was to be provided to the Settlement Class. [Dkt. 57]; [Dkt. 60].

In compliance with those directives, Simpluris received data from Defendants on May 28, 2020, containing Class Member and FLSA Collective Member names, last known mailing addresses, Social Security numbers as well as pertinent information related to the Class Members and FLSA Collective Members for the relevant time period. (Alcantara Decl., ¶6). The final class list contained 69 Class Members, of which 58 are FLSA Collective Members. (Id. at ¶6). After receiving the class/collective list, the Claims

Administrator caused a National Change of Address (NCOA) search to be performed to update the class list of addresses as accurately as possible. (<u>Id.</u> at ¶7).[6]

On June 10, 2020, Simpluris mailed the Notice Packet via U.S. first class mail, in English, to all Class Members and Collective Members on the Class List. (<u>Id.</u> at ¶8). The Notice Packet conformed to the Court's May 18, 2020 Order. (<u>Id.</u>, Exh. A). On July 13, 2020, and again August 21, 2020, Simpluris mailed FLSA Claim Form reminders. (<u>Id.</u>, ¶10, Exh. B). There were zero (0) Notice Packets that were undeliverable. (<u>Id.</u> at ¶9).

Further, Simpluris set up a toll-free number to field questions from the Class and Collective Members. (<u>Id.</u> at ¶4). Simpluris set up www.PrimaryProviderSettlement.com, a website to provide additional information to the Class Members and provide access to submit the FLSA Claim Form online. (<u>Id.</u> at ¶11); (Decl. Hatcher, ¶52 Exh. 6). This website had online access to relevant Court documents and the Notice packet available for download. (<u>Id.</u>). In addition, Class Members were able to submit their FLSA Claim forms via the website. (<u>Id.</u>).

## IV.    THE   COURT   SHOULD   GRANT   FINAL   APPROVAL   OF   THE SETTLEMENT

"A strong judicial policy favors settlement of class actions." *Corona v. Remington Lodging & Hospitality, LLC* (C.D. Cal. 2019) 2019 U.S.Dist.LEXIS 68116, at *14; *citing Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "In order to approve the class action settlement herein, the Court must conduct a threestep inquiry." <u>Id.</u>; *citing Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 972 (E.D. Cal. 2012).

Judicial proceedings under Federal Rule of Civil Procedure 23 follow a defined three-step procedure for approval of class action settlements:

1) Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2) Dissemination of notice of the proposed settlement to the affected Class

---

[6] A NCOA contains changes of addresses filed with the U.S. Postal Service.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Members; and

3) A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

(See Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), § 21.63, *et seq.*).

In granting preliminary approval of the Settlement and directing that notice be disseminated to the Class and FLSA Collective Members, the Court took the first step in the process, and the Claims Administrator has taken the second step by implementing the notice program directed by the Court. [Dkt. 57]; (Decl. Alcantara at ¶¶ 5-11). By this motion, Plaintiff respectfully requests that the Court take the third and final step by granting final approval of the Settlement.[7]

## A.     The Settlement is Fair, Reasonable and Adequate

The law favors the compromise and settlement of class action suits. *See*, *e.g.*, *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."). In weighing final approval of a class settlement, the Court's task is to determine whether the settlement, taken as a whole, is fair, reasonable, and adequate. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The Ninth Circuit has established a list of factors to consider when making that assessment: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the

---

[7] Plaintiff will file a Reply updating the Court as to the reaction of the 3 DSP SCM whose June 12, 2020 Notice inadvertently provided an incorrect estimated payment.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

proposed settlement. *Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026.

Additionally, Rule 23(e)(2) establishes factors for the Court's consideration which overlap to some degree with the *Churchill Village* factors. Fed. R. Civ. P. 23(e)(2) (court must consider whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims, the terms of any proposed award of attorney's fees, including timing of payment, and any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other).

Application of these factors here supports the conclusion that the Settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

## B. FLSA Collective Action Settlement Approval

Similar to Rule 23 class actions "[s]ettlement of an FLSA claim, including a collective class action claim, requires court approval." *Thompson v. Costco Wholesale Corp.* (S.D. Cal. 2017) 2017 U.S.Dist.LEXIS 142290, at *13; *citing Kempen v. Matheson Tri-Gas, Inc.* (N.D. Cal. 2016) 2016 U.S. Dist. LEXIS 100537, 2016 WL 407336, at *4. Generally, California district courts look to see if the settlements constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.*; 29 U.S.C. § 216(b). Although ostensibly different from the standard governing approval of class actions under Rule 23 "many courts begin with the well-established criteria for assessing whether a class action settlement is fair, reasonable and adequate under [Rule] 23(e) and reason by analogy to the FLSA context." *Id.* Here, the Court has already ruled there is a bona fide dispute over the FLSA. [Dkt. 57]. As shown *infra*, the FLSA Collective Action Settlement is fair, reasonable, and adequate under Rule 23(e).

## C. The Settlement is Fair, Adequate and Reasonable Pursuant to Rule 23(e)

### 1. Rule 23(e)(1): Notice/Claim Process was Fair, Adequate and Reasonable

"Rule 23(e)(1) requires a proposed settlement may only be approved after notice is

directed in a reasonable manner to all class members who would be bound by the agreement." *Corona, supra*, 2019 U.S.Dist.LEXIS 68116, at *18; *citing* Rule 23(e)(1). In this Court's Preliminary Approval Order, the Court approved the notice packet and claims process. [Dkt. 57]. The Claims Administrator implemented the notice and claim form program directed by the Court. [Dkt. 57, 60]; (Decl. Alcantara at ¶¶ 5-11). The notice and claim process was adequate.

### 2. Rule 23(e)(2)(A) and Rule 23(e)(2)(B): Arm's Length Negotiations and Adequate Representation Show Fair, Reasonable and Adequate Settlement

The Settlement is the result of an adversarial process. (Decl. Hatcher, ¶9); [Dkt. 44-1 at ¶10]. The parties engaged in a highly adversarial challenge regarding the DSP. [Dkt. 45 at RJN 1-5]. Plaintiff's counsel and Plaintiff made factual investigation and discovery prior to the initiation of negotiations. (Decl. Hatcher ¶¶ 6, 8); [Dkt. 44-1 at ¶¶ 10, 11]. The Settlement is the result, in part, of formal mediation with Steven Rottman, Esq., an experienced wage and hour class action mediator, as well as further negotiations between the parties after the mediation and after the Court's ruling on Plaintiff's Motion for Preliminary Approval. (Id.); *See Rodriguez v. West Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948, 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested."); *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (noting that the parties' use of a mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel."); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. Mar. 9, 1989) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.").

Plaintiff, and Plaintiff's counsel, obtained additional relief for the SCM above the DSP. Defendants reclassified the SCM as non-exempt based on Plaintiff's PAGA Notice and lawsuit. [Dkt. 44 at 25:6-9; Dkt. 44-8 at ¶8; Dkt. 45 at RJN 3 and 4; Dkt. 45-2 at ¶¶2-

10 and Exhs. A-I; Dkt. 45-1]. Plaintiff and Plaintiff's counsel remained steadfast and obtained additional relief by amending the complaint to add a FLSA cause of action, that could not be released by the DSP. (Decl. Plf. at ¶8); (Decl. Hatcher at ¶13); [Dkt. 1-1, 1-3]. The Settlement will pay the average PCM approximately $1,906.52 based on the Settlement. (Decl. Alcantara, ¶14). The Settlement will pay the average SCM approximately $4,391.53 or $3,402.80 (an additional payment of $196.11 to the average DSP of $3,206.68 for DSP SCM). (Alcantara Decl. ¶14); (Decl. Hatcher ¶13). The Settlement provides an additional benefit to the DSP SCM—an additional average settlement payment of approximately $196.11 for the Rule 23 class action settlement. (Decl. Alcantara ¶14). Further, the Settlement limits the releases to violations to claims deriving from the alleged exempt misclassification with a superseding clause as compared to the DSP release which contained a Civil Code §1542 release. *Compare* (Exh. 1A at I.H; I.J; I.FF; I.GG; X at ¶21; XI; XVII) [Dkt. 45-2 at Exhs. D and H].

### 3. <u>Rule 23(e)(2)(C): The Settlement is Fair, Reasonable and Adequate</u>

#### i. Rule 23(e)(2)(C)(i): Analysis Supports Approval

The "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *7 (C.D. Cal. 2014). When considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case against the risk, expense, complexity and likely duration of further litigation. *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026.

Here, the Settlement is a significant recovery in light of the DSP—with its release of claims in this lawsuit—that Defendants unilaterally obtained from the SCM. The claims in this case are predicated on Defendants allegedly misclassifying Plaintiff, the SCM, and the PCM as exempt employees. [Dkt. 44 at 20:6-9; Dkt. 44-2 at pgs. 57-90]. Defendants limited its exposure by re-classifying the SCM and PCM as non-exempt employees in or around September 2018. [Dkt. 44-8 at ¶8]; [Dkt. 45 at RJN 3 and 4; Dkt. 45-2 at ¶3 and Exh. B "Talking Points"] (FAQ – "If you did nothing wrong, why are you changing me to

a non-exempt now?").

Plaintiff estimated that Defendants' potential exposure was approximately $3,218,060 not including PAGA civil penalties. [Dkt. 44-1 at ¶13]. This exposure is primarily driven by unpaid overtime wages, rest period violations, wage statement violations, and waiting time penalties.

Defendants' exposure in this case had to be drastically reduced to account for the DSP with the individual release agreements for the claims in this lawsuit that Defendants obtained from 57 of the 69 Class Members (who are nonetheless still participating in the settlement fund). [Dkt. 44-1 at ¶13]; (Alcantar Decl. at ¶6); *Aguilar v. Zep Inc.* (N.D.Cal. May 12, 2014) 2014 U.S.Dist.LEXIS 65166, at *12 and *15-21; *Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796.

Plaintiff unsuccessfully challenged the DSP, in part, via an *ex parte* application for a Temporary Restraining Order. [Dkt. 45 at RJN 1-5; Dkts. 45-1; 45-2]. There was significant risk that the DSP releases subjected multiple Class Member claims to summary adjudication post class certification.

This Settlement is fair and reasonable given the inherent risks, cost and length of litigation. District Courts in the Ninth Circuit have observed that "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery." *Telecomm. Corp. v. DirectTV* (C.D. Cal. 2004) 221 F.R.D. 523, 527. The $500,000 settlement is significantly more than a "fraction" when considered that it provides a definite and significant recovery in light of the risks of further litigation. [Dkt. 44-1 at ¶¶10-15].

The Settlement is reasonable in light of the strengths of Plaintiff's case, the risks of further litigation, the risks of class and conditional certification, the risks of prevailing at trial, the estimated values of the claims at trial, and Defendants' affirmative defense that the majority of class claims were released by the DSP.

### ii.    Rule 23(e)(2)(C)(ii): Analysis Supports Approval

The Settlement provides an effective method of distributing relief to the Settlement Class

16

and FLSA Collective Members. The Settlement provides <u>non-reversionary</u> relief to the SCM and the PCM. (Exh. 1A at Secs. I.W; VII; IV); (Exh. 1B at ¶4). The Settlement establishes two separate funds for the Class Action and Collective Action settlement: (1) a NSA for Class Action for the SCM and (2) a NSA for Collective Action for the PCM. This ensures that consideration exists independently for the settlement of the Rule 23 class claims and independently for the settlement of the FLSA collective claims. This also provides that the separate funds are not affected by participating levels in the separate funds. *See Millan v. Cascade Water Servs.* (E.D.Cal. 2015) 310 F.R.D. 593. Payments are calculated based on a pro rata share for the separate funds based on workweeks during the alleged exempt misclassification for the relevant time periods. (<u>Id.</u>); (Exh. 1B at ¶¶ 4, 5). The settlement share calculation ensures that settlement shares will be higher for those SCM and PCM with longer periods of employment during the period of alleged violations. The SCM Payment calculation and distribution accounts for the amounts already paid to SCM in the form of the DSP and for waiting time penalties. (Exh. 1B at ¶¶ 4, 5); [Dkt. 52 at Secs. I.2 to I.4]. Further, PCM were provided 75 days and two reminders to submit the FLSA Claim Form and opt-in to this FLSA Collective Action Settlement. (Alcantara Decl. ¶¶ 5-10). The FLSA Collective Members were also provided the opportunity submit the FLSA Claim Form online or by mail. (<u>Id.</u> at ¶¶ 5 and 11).

### iii.    Rule 23(e)(2)(C)(iii): Analysis Supports Approval

This common fund Settlement allocates 25% of the MSC for the putative class/collective counsel as attorney's fees. (Exh. 1A at I.B). This is the Ninth Circuit benchmark. *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047. The attorney's fees are not paid unless and until the Court grants final approval and the difference of any reduction in awarded attorney's fees are distributed to the SCM in a pro rata share. (Exh. 1A at I.B).

### iv.    Rule 23(e)(2)(C)(iv): Analysis Supports Approval

This motion provides a copy of the exemplar of DSP release agreements unilaterally sought and obtained by Defendants. [Dkt. 45 at RJN 3 and 4; Dkt. 45-2 at Exhs. D and H).

Rule 23(e)(2)(C)(iv) is met. (Dkt. 44-1 at ¶19).

### 4. Rule 23(e)(2)(D): The Settlement Treats Members Equitably

The proposed Settlement treats SCM and PCM equitably relative to each other. First, the PCM settlement payment, not affected by the DSP, are calculated equitably on a pro rata workweek basis of the NSA for Collective Action based on the period of infractions due to the alleged misclassification as exempt employees. (Exh. 1A at Sec. VIII). The payment to the SCM are equitably calculated based on Fund 1 and Fund 2 of the NSA for Class Action to account for the DSP. (Exh. 1B at ¶¶ 4, 5). The SCM payments are based on the same pro rata workweek basis. (Id.). As shown supra, pursuant to Rule 23(e), the Settlement is fair, reasonable and adequate.

### D.    9th Circuit Factors Show a Fair, Reasonable and Adequate Settlement

#### 1. Strength of Plaintiff's Case

As shown supra in Sections IV.C.3.i and IV.C.3.ii, Plaintiff's likelihood of success was properly accounted for in the settlement amount. The proposed settlement appropriately balances the costs, risks, and likely delay of further litigation, on the one hand, against the benefits provided, on the other hand. See 4 *Newberg on Class Actions* § 11:50 at 155 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). This initial fairness factor addresses Plaintiff's likelihood of success on the merits. *Corona, supra*, 2019 U.S.Dist.LEXIS 68116, at *19-20; *citing Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009).  This factor weighs in favor of approval.

#### 2. Risks, Expense, Complexity, And Likely Duration of Further Litigation

As shown supra in Sections IV.C.3.i and IV.C.3.ii, this factor also weighs in favor of final approval. The significant risk in this case is that after a class certification order, Defendants would seek, and be successful with, a summary adjudication against 57 of the 69 class members who signed DSP. *See Aguilar, supra*, 2014 U.S.Dist.LEXIS 65166, at *21 (summary judgment granted based on prior release of Labor Code §2802 claims).

1
2
3
4
5
6
7

Although some Courts have invalidated putative class member release agreements, the risk is that Defendants' conduct here was sufficient in obtaining the DSP and that the same should not be invalidated. *See Marino v. CACafe, Inc.*, 2017 U.S.Dist.LEXIS 64947, at *6 and *10 (N.D. Cal. 2017) (invalidating putative class member releases when the communication from Defendants did not inform putative class members that there was a lawsuit pending that concerned their legal rights). This issue was preliminarily addressed with Plaintiff's *ex parte* application for a TRO against the DSP. [Dkt. 45 at RJN 1-5].

8
9
10
11
12

The expense of further litigation here includes significant law and motion, that is anticipated: (1) Plaintiff's Motion for Corrective Action pertaining to the Direct Settlement Agreements, (2) Plaintiff's Motion for Class Certification, (3) Defendants' Motion for Summary Adjudication, and (4) Defendants' Motion for Decertification. Not to mention potential appeals regarding the same.

13
14
15
16

This settlement avoids the aforementioned risks and the accompanying expense. *See, e.g., In re Portal Software, Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

17
18
19
20
21
22
23
24

Upon further litigation, any determination as to the validity of the DSP obtained by Defendants before the mediation is likely to yield an appeal given the impact of the DSP on the litigation for each party. Plaintiff considers this an excellent settlement given the risk involved as Plaintiff's efforts to remain steadfast in negotiating a class and collective action settlement has resulted in a significant monetary benefit to the SCM and the PCM—including an average Non-DSP SCM payment of $4,391.53, an average additional payment to the DSP SCM of $196.11 (for a total average payment of $3,402.80), and an average PCM payment of $1,906.52. (Decl. Alcantara, ¶14).

25
26
27
28

Accordingly, this factor favors final approval. Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted).

### 3. <u>The Risks of Maintaining Class Action Status Throughout Trial</u>

As detailed supra, Plaintiff's ability to maintain a certified class and prevail on her claims was far from guaranteed. There is significant risk that the Class would be subject to decertification if Defendants prevailed on a summary adjudication motion against the 57 DSP SCM, leaving only 12 class members. While Plaintiff disagrees that the DSP releases are valid, Plaintiff recognizes there is a significant potential risk that a class might be decertified due to a post certification summary judgment/adjudication motion. So, while Plaintiff believes that she would have a strong argument for certifying a litigation class, obtaining and maintaining class action status throughout the trial is always a challenge, and is far from guaranteed in this case. This factor favors final approval of the Settlement Agreement.

### 4. <u>The Amount Offered in The Settlement</u>

Courts in the Ninth Circuit have observed that "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery." *Telecomm. Corp. v. DirectV* (C.D. Cal. 2004) 221 F.R.D. 523, 527. As shown supra, Plaintiff estimated Defendants' potential exposure was approximately $3,218,060, not including PAGA civil penalties. [Dkt. 44-1 at 13]. The settlement here of $500,000 is significantly more than a "fraction" when considered that it provides a definite and significant recovery in light of the risks of further litigation. *See* Sections IV.C.3.i and IV.C.3.ii. Furthermore, the settlement provides a greater benefit to the SCM who signed DSP—an additional average settlement payment of approximately $196.11 for DSP SCM and average settlement payment of approximately $1,906.52 for PCM.

The settlement amount in this case is 15.5% which is fair and adequate considering the challenges and uncertainties of the case. *Weinstein v. Mortgage Contr. Servs., LLC* (C.D.Cal. Oct. 23, 2018, No. EDCV 14-02521 JGB (SPx)) 2018 U.S.Dist.LEXIS 182718 (Settlement amount of less than one-fourth of potential recovery was fair and adequate given challenges and uncertainties); *Corona, supra*, 2019 U.S.Dist.LEXIS 68116, at *22 (Settlement amount 19.5% of potential damages recovery was realistic and

reasonable given the potential defenses Defendants could put forward, including an argument against class certification). This factor favors final approval of the Settlement Agreement.

### 5.  <u>Sufficient Discovery and Investigation Has Been Completed</u>

"This factor requires the Court evaluate whether 'the parties have sufficient information to make an informed decision about settlement.'" *Corona,supra*, 2019 U.S.Dist.LEXIS 68116, at *22; *Linney v. Cellular Alaska P'ship* (9th Cir. 1998) 151 F.3d 1234. The relevant inquiry is whether "the parties have developed a clear idea of the strengths and weaknesses of their respective cases. <u>Id.</u> at 22-24; *citing Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE, 2008 U.S. Dist. LEXIS 83192, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases."); *Schaffer v. Litton Loan Servicing, LP*, 2012 U.S.Dist.LEXIS 189830, at *42 (C.D. Cal. Nov. 2012).

Plaintiff and Plaintiff's Counsel conducted a thorough investigation in this case and have diligently pursued an investigation of the SCM and PCM claims against Defendants, including reviewing relevant documents, applicable law and potential defenses. (Decl. Hatcher ¶8); [Dkt. 44-1 at ¶11]. Further, prior to mediation, Plaintiff's Counsel was in receipt of a copy of Defendants' letters regarding the DSP, a copy of the DSP release agreement, and had challenged the DSP via the *ex parte* application for TRO. (<u>Id.</u> at ¶8); [Dkt. 45 at RJN 1-4; Dkt. 45-1; Dkt. 45-2]. Moreover, Defendants provided Class Counsel data related to class size and workweeks. (Decl. Hatcher ¶8).

Through this discovery and investigation, Plaintiff was well positioned to evaluate the strengths and vulnerabilities of the claims and to engage in settlement discussions at the March 13, 2019 mediation and the direct settlement negotiations thereafter that eventually led to this settlement. (<u>Id.</u>); [Dkt. 44-1 at ¶¶10-11]. At all times, the parties' settlement negotiations have been non-collusive, adversarial, and at arm's length. (<u>Id.</u>); [Dkt. 44-1 at ¶¶10-11]. Thus, this factor supports final approval. "[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of

the strengths and weaknesses of their cases." *Corona, supra*, 2019 U.S.Dist.LEXIS 68116, at *23-24. This factor favors final approval of the Settlement Agreement.

### 6.    <u>The Experience and Views of Counsel</u>

"In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." *Corona, supra*, 2019 U.S.Dist.LEXIS 68116, at *24; *citing Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527-528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). "This reliance is predicated on the fact that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'" <u>Id.</u>; *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). In this case, Plaintiff's Counsel have extensive experience litigating and settling wage and hour class action cases (Decl. Hatcher, ¶¶ ¶ 3-4, 18-25, 37, 39-49, 52-56). The fact that qualified and well-informed counsel, after a thorough investigation and analysis of available documentation and data, endorse the settlement as being fair, reasonable, and adequate is significant and should weigh heavily in favor of the Court approving the settlement. The recovery for each SCM and PCM is substantial given the risks inherent in this litigation and the defenses asserted. This Settlement is fair, reasonable, and adequate. (<u>Id.</u> ¶¶ 8, 10).

### 7.    <u>Presence of Governmental Participant</u>

The only governmental participation in this matter is the payment to the Labor Workforce Development Agency (LWDA). The LWDA received a copy of the Settlement Agreement and a copy of the Order Granting Preliminary Approval of the Class Action Settlement on or about September 21, 2020. (Decl. Hatcher ¶51; Exh. 4).

### 8.    <u>Reaction of the Class and Collective Members</u>

No objections have been lodged by the FLSA Collective Members and 72% of the FLSA Collective Members have opted-in. (Alcantara Decl. at ¶¶ 12, 16-17). The reaction of the SCM to the settlement has been 100% positive with zero opt-outs and objections.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

(Id. ¶¶ 15-17).[8]

### 9. <u>Arm's Length Negotiations</u>

As shown supra in Sections IV.C.2, this settlement was the product of arm's length negotiations. "Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F .2d 1268, 1290 (9th Cir. 1992). Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. See 4 *Newberg* § 11.41; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10, 2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980). The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here. (Decl. Hatcher ¶¶ 3, 4, 21, 8, 10).

### E.   Rule 23(a), (b)(3) and (c)(2)(B) Requirements Satisfied

In its Preliminary Approval Order, the Court certified the Class in this matter under Rules 23(a), 23(b)(3) and 23(c)(2)(B). [Dkt. 57]. The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." *Corona, supra*, 2019 U.S.Dist.LEXIS 68116, at *17-18; *Adoma*, 913 F. Supp. 2d at 974; *see also Harris v. Vector Mktg. Corp.*, 2012 U.S. Dist. LEXIS 13797, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); *Weinstein, supra*, 2018 U.S. Dist. LEXIS 182718, at *15. The Rule 23(a), 23(b)(3) and 23(c)(2)(B) requirements remain satisfied.

///

---

[8] Plaintiff will file a Reply updating the Court as to the reaction of the 3 DSP SCM whose June 12, 2020 Notice inadvertently provided an incorrect estimated payment.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## V.    SETTLEMENT PENALTIES UNDER PAGA ARE REASONABLE

The PAGA allocation is reasonable. The Settlement allocates $10,000 to civil penalties under PAGA and provides for a payment of $7,500 in civil penalties to the California LWDA (75% of $10,000). (Decl. Hatcher ¶50, Exh. 1A at Sec. I.S). The LWDA received a copy of the Settlement Agreement, a copy of the Order granting preliminary approval on or about September 21, 2020. (Decl. Hatcher ¶51; Exh. 4).

The amount allocated to PAGA penalties is 2% of the MSC ($10,000 divided by $500,000). (Decl. Hatcher ¶50). Civil penalties carry a one (1) year statute of limitation. For mediation, Plaintiff estimated the realistic PAGA civil penalty exposure as $314,600. (Id.). The $10,000 PAGA allocation is 3.18% of this estimated exposure ($10,000 / $314,600 = 3.18%).

The legal basis for awarding PAGA civil penalties in this case has been disputed by the parties and legal uncertainties exist as to viability of some of the theories of liability. First, if the underlying Labor Code claims failed so did the derivative PAGA claims. Next, Defendants raised affirmative defenses ("AD") against the PAGA claim, including failure to exhaust administrative remedies. [Dkts. 7 at 12th AD; 8 at 12th AD; 9 at 12th AD; 1-7 at 3rd AD].

Under the circumstances of this case the proposed $10,000 civil penalty amount is fair and adequate. The Court should evaluate "the PAGA settlement in light of the PAGA requirement that the award not be 'unjust, arbitrary and oppressive, or confiscatory.'" *O'Connor v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 110281 at *10; *citing* Cal. Labor Code § 2699(e)(2). Courts "may award a lesser amount than the maximum civil penalty specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2).

The PAGA allocation adequately takes this into consideration. After Plaintiff's PAGA notice, Defendants began taking remedial steps of reclassifying the California based nurses who processed authorizations as non-exempt employees. [Dkt. 44 at 25:6-9; Dkt.

44-8 at ¶8; Dkt. 45 at RJN 3 and 4; Dkt. 45-2 at ¶¶2–10 and Exhs. A-I; Dkt. 45-1]. "Representative PAGA actions 'directly enforce *the state's* interest in . . . deterring employers who violate California's labor laws.'" *Williams v. Superior Court* (2017) 3 Cal.5th 531, 548; *Iskanian v. CLS Transportation Los Angeles, LLC*, *supra*, 59 Cal.4th at p. 387; see *Arias v. Superior Court*, *supra*, 46 Cal.4th at pp. 980–981. Accordingly, the PAGA civil penalties would be subject to significant discount given Plaintiff's PAGA notice already resulted in the deterrent effect for Defendants' alleged misclassification.

Further, in this case, the PAGA exposure was significantly less than the damages exposure. This is represented by the allocations for the FLSA and Class settlement allocations, which, unlike civil penalties, are not subject to the Court's reduction. Thus, the proposed $10,000 allocation to PAGA is fair and adequate and should be approved. Courts routinely approve PAGA allocations falling within the range of 2 percent of the gross settlement amount. *Alcala v. Meyer Logistics, Inc.* (C.D. Cal. 2019) 2019 U.S.Dist.LEXIS 166879, at *26 (approving $10,000 PAGA allocation on a $400,000 gross settlement amount, equivalent to 1.25 percent); *Turner v. Motel 6 Operating L.P.* (C.D. Cal. 2018) 2018 U.S.Dist.LEXIS 224004, at *19-20.

## VI.    CONCLUSION

For the above reasons, final approval of the settlement is appropriate and should be granted by the Court.

Dated: September 28, 2020

Respectfully Submitted,
**THE MYERS LAW GROUP, A.P.C.**


By:    /s/Jason Hatcher
    David P. Myers, Esq.
    Jason Hatcher, Esq.
    Attorneys for Plaintiff, Settlement
    Class embers and Participating
    Collective Members